Amy L.B. Ginsburg (SBN 275805)
*Of Counsel*
THOMASSON PLLC
402 West Broadway, Suite 950
San Diego, CA 92101
Telephone: (877) 857-5733
Facsimile: (973) 559-5579
Email: Amy@thomassonpllc.com

Attorneys for Plaintiff, MATTHEW AARONSON

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATTHEW AARONSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>*vs*.<br><br>ALLIANCE CREDIT SERVICES, INC., BRET A. YAPLE, and DOES 1-50,<br><br>Defendants. | CASE NO. 3:22-cv-3842<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) Fair Debt Collection Practices Act**<br>**(2) Rosenthal Fair Debt Collection Practices Act**<br>**(3) Bus. & Prof. Code § 17200** *et seq*.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, MATTHEW AARONSON, individually and on behalf of all others similarly situated, by way of this Complaint against the Defendants, ALLIANCE CREDIT SERVICES, INC. ("ALLIANCE"), BRET A. YAPLE, and DOES 1-50 (collectively, "Defendants"), says:

## I. PARTIES

1. AARONSON is a natural person who is a resident of the City of West Hollywood, Los Angeles County, State of California.

2. ALLIANCE is a for profit corporation company formed under California law.

3. ALLIANCE maintains its principal place of business at 4 Orinda Way, Suite 180-C, Orinda, California 94563.

4. At all relevant times, YAPLE was licensed as an attorney at law of the State of California, having been admitted on June 4, 1998, and holding Bar Number 195809.

5.  At all relevant times, YAPLE is, and has been, a citizen and resident of Capitan Cook, Hawai'i County, Hawaii.

6.  The true names and capacities of DOES 1-50, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of the DOE defendants once they are ascertained.

7.  On information and belief, DOES 1-50 are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw the violative policies and procedures used by the employees of the named Defendants who are the subject of this Complaint. DOES 1-50 personally control, and are engaged in, the illegal acts, policies, and practices utilized by the named Defendants and, therefore, are personally liable for all the wrongdoing alleged in this Complaint

8.  At all relevant times, each Defendant was an agent and employee of each remaining Defendant and was always herein mentioned acting within the scope of said agency.

## II.  JURISDICTION AND VENUE

9.  This Court's jurisdiction arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

10. Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

11. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred within this federal judicial district, and because the named Defendants regularly transacts business within this federal judicial district and, therefore, reside in this federal judicial district within the meaning of 28 U.S.C. § 1391(b) and (c).

## III. PRELIMINARY STATEMENT

12. Plaintiff, individually and on behalf of all others similarly situated, and demanding a trial by jury, brings this action for Defendants' conduct in connection with their attempts to collect alleged debts from Plaintiff and putative class members in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, California Rosenthal Fair Debt

Collection Practices Act (RFDCPA), Cal. Civ. Code § 1788, *et seq.*, and Business and Professions Code § 17200 *et seq.*, often referred to as the "Unfair Competition Law" (UCL).

13. The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

14. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Ninth Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated debtor." *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).

15. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: falsely representing the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); falsely representing that any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt, 15 U.S.C. § 1692e(2)(B); threatening to take any action that is not intended to be taken, 15 U.S.C. § 1692e(5); using false representations or implications that any individual is an attorney or that any communication is from an attorney, 15 U.S.C. § 1692e(3); and using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

16. The RFDCPA regulates collection agencies and original creditors attempting to collect debts on their own behalf. The California legislature has determined that the banking and

credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. Cal. Civ. Code § 1788.1. The California legislature has further determined that there is a need to ensure that debt collectors exercise their responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices. *Id.*

17. The RFDCPA is a remedial statute that should be broadly interpreted to effectuate its purpose. *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal. App. 4th 324, 340. In addition to its other requirements and prohibitions, the RFDCPA requires debt collectors to comply with the provisions of the FDCPA (Civ. Code, § 1788.17) both of which are "strict liability" statutes. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162 (9th Cir. 2006). Thus, the RFDCPA requires that, notwithstanding any of its other provisions, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of 15 U.S.C. §§ 1692b to 1692j, inclusive of, and shall be subject to the remedies in 15 U.S.C. § 1692k.

18. This case involves money, property, or other equivalent, alleged to be due or owing from natural persons by reason of consumer credit transactions. As such, this action arises out of "consumer debts" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

19. When enacting the California Unfair Practices Act, the California Legislature determined such laws were necessary to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent, and discriminatory practices by which fair and honest competition is destroyed or prevented. Cal. Bus. & Prof. Code § 17001.

20. Any person who, either as director, officer or agent of any firm or corporation or as agent of any person, violating the California Unfair Practices Act, assists or aids, directly or indirectly, in such violation is responsible therefor equally with the person, firm or corporation for which he acts. Cal. Bus. & Prof. Code § 17095.

1    21.    The remedies or penalties provided by the California Unfair Practices Act are cumulative to each other and to the remedies or penalties available under all other laws unless a statute expressly provides to the contrary. Cal. Bus. & Prof. Code § 17205.

22.    Plaintiff, individually and on behalf of all others similarly situated, seeks statutory damages, attorney fees, costs, and such other relief, whether equitable or legal in nature, as deemed appropriate by this Court pursuant to the FDCPA, RFDCPA and the UCL.

### IV.  FACTS

23.    ALLIANCE is a bulk purchaser of portfolios of defaulted consumer debt from other debt buyers without recourse for pennies, or less, on the dollar.

24.    ALLIANCE specializes in acquiring portfolios of distressed, defaulted consumer debts from third parties that is difficult to collect, but highly profitable, when consumers pay.

25.    After purchasing its defaulted consumer debts from third parties, ALLIANCE undertakes to liquidate those debts by filing lawsuits to collect them.

26.    ALLIANCE has been the plaintiff in over a thousand lawsuits in California state courts prior to filing this lawsuit.

27.    ALLIANCE mostly files its lawsuits against consumers with little to no admissible evidence to prove its claims in the hope that most consumers will never appear and defend, thus allowing ALLIANCE to obtain a default judgment against the consumer which gives ALLIANCE more power to collect the entire amount of money owed from consumers.

28.    ALLIANCE is a business whose principal purpose is the collection of defaulted consumer debts.

29.    In attempting to collect debts, ALLIANCE uses instruments of interstate commerce, including the mails, telephone, and internet.

30.    ALLIANCE mailed Plaintiff a letter dated June 28, 2021 ("Letter").

31.    A true copy of the Letter is attached as ***Exhibit A***.

32.    The Letter falsely alleged Plaintiff incurred and defaulted on a financial obligation ("Debt") originated by Circleback Lending ("Circleback").

5
CLASS ACTION COMPLAINT

33. The Debt arose out of one or more transactions in which the money, property, and services that were the subject of the transactions were for personal, family, and household purposes.

34. Defendants contend the Debt is in default.

35. Defendants contend the Debt had previously been charged off years before the Debt was eventually sold to ALLIANCE.

36. Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

37. The Letter was ALLIANCE's first and only written communication regarding the Debt.

38. Circleback is not the originating creditor.

39. The Letter also falsely asserted that the "Balance Owing as of 6/25/21 is: $12793.61."

40. $12793.61 was more than ALLIANCE later claimed was the "Balance Owing" as of September 14, 2021.

41. The Letter does not disclose that the "Balance Owing" included interest or other charges.

42. The Letter does not disclose that the "Balance Owing" included interest or other charges.

43. Interest may not legally or contractually be added to the alleged Debt because, *inter alia*, the right to do so was waived.

44. Other charges may not legally or contractually be added to the alleged Debt because, *inter alia*, the right to do so was waived.

45. The Letter was materially false, deceptive, and misleading to Plaintiff, as it would be to other least sophisticated consumers, because he was unaware Defendants were adding daily accruing interest and other charges to the Debt and he believed the Debt's balance remained static as it had been.

46. The Letter was materially false, deceptive, and misleading to Plaintiff, as it would be to other least sophisticated consumers, because he had to difficult decisions about how to use scarce financial resources, and the fear of late charges and other charges influenced Plaintiff's choices just as it would for other least sophisticated consumers.

47. A rational person with limited financial resources would, based on the Letter, choose to pay the Debt over an otherwise identical debt which truthfully stated the balance could lawfully accrue interest and other charges.

48. The Letter was created by merging information specific to a debt and consumer with a template to create what is commonly called a "form letter."

49. ALLIANCE's use of a form letter like the Letter competitively disadvantages honest debt collectors do do not engage in deceptive trade practices to collect debts from consumers.

50. The deprived Plaintiff of truthful, non-misleading, information in connection with ALLIANCE's attempt to collect a debt.

51. ALLIANCE mailed the same form collection letter as *Exhibit A to* to others who, like Plaintiff, reside in California.

52. In an attempt to collect the Debt, ALLIANCE hired YAPLE commenced an action ("Collection Action") against AARONSON by filing a written complaint ("Collection Complaint") in the Superior Court of California.

53. YAPLE attempts to collect defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and internet.

54. YAPLE has filed hundreds of lawsuits on behalf of ALLIANCE against Califonia consumers, like Plaintiff,  to collect defaulted consumer debts ALLIANCE purchased.

55. A true copy of the Collection Complaint is attached as ***Exhibit B***.

56. The Collection Action was captioned as *Alliance Credit Services, Inc. vs. Aaronson* and designated by Docket No. 21CHLC33115.

57. The Collection Complaint alleged that the Debt originated with "County Bank" which is a Delaware bank located in Delaware.

58. The Collection Action was commenced on September 14, 2021.

59. At the time the Collection Action was commenced more than four years had passed since Plaintiff had allegedly defaulted on the Default.

60. A cause of action based on the Debt arose against Plaintiff before September 14, 2021.

61. At the time the cause of action arose, the Debt was subject to a written contract which included the selection of Delaware law.

62. The limitations period applicable to the causes of action alleged in the Collection Complaint is three years based on Delaware law.

63. Defendants filed the Collection Complaint more than three years after the cause of action arose.

64. The claims alleged in the Collection Complaint were time-barred at the time Defendants commenced the Collection Action.

65. After being served with process in the Collection Action, Plaintiff incurred financial expense associated in trying to defend the Collection Action and given those expenses ultimately gave up hope and paid Defendants $ 11,487 to avoid having a judgment entered.

66. The Collection Complaint seeks to collect principal, interest, fees, and costs, to which Defendants had no legal or contractual basis to collect.

67. YAPLE failed to conduct a reasonable investigation concerning the factual and legal claims prior to filing the Collection Complaint.

68. By signing the Collection Complaint, YAPLE certified that he read the Collection Complaint and that, to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the factual allegations have evidentiary support.

69. YAPLE files hundreds of lawsuits against consumers in the State of California on behalf of ALLIANCE that are substantively identical to the Collection Complaint.

70. The Collection Complaint falsely represents and implies that a licensed attorney was directly and/or personally involved in reviewing Plaintiff's file, account, loan and/or records prior to the Collection Complaint being filed.

71. After receiving the Collection Complaint, Plaintiff reasonably inferred, as would a least sophisticated consumer, that the creditor was proceeding more aggressively as the creditor incurred the expense of hiring a licensed attorney who was personally involved with the review and collection of Debt by way of filing a lawsuit against him.

72. The Collection Complaint is actually a computer-generated form complaint that was filed and served without any meaningful attorney review or involvement and with no intention of ever providing such a review or involvement.

73. Plaintiff is informed and believes, and on that basis alleges, that Defendants have a policy and practice of filing collection lawsuits against consumers, such as Plaintiff, that are computer-generated—in the form of the Collection Complaint—that falsely imply that an attorney has engaged in meaningful attorney review or involvement prior to filing and serving those complaints.

74. As a direct, legal and proximate cause of Defendants' commencement and prosecution of the Collection Action on the time-barred Debt, Plaintiff incurred damages including payment of the time-barred Debt.

## V. CLASS ALLEGATIONS

75. ALLIANCE'S conduct is consistent with its policies and practices when attempting to collect debts from consumers. Consequently, Plaintiff brings this action individually and on behalf of all other persons similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

76. Plaintiff seeks to certify two classes under Fed. R. Civ. P. 23(a) and 23(b)(3).

77. *Class Definition.* The Letter Class consists of:

> All persons with a California address to whom ALLIANCE mailed a written communication, in the form of *Exhibit A*, seeking to collect a debt between June 28, 2021 and July 19, 2021.

78. The Lawsuit Class consists of:

> All persons with a California address who were served with a complaint filed by YAPLE in the Superior Court of California on behalf of ALLIANCE, in substantially the same form as *Exhibit B*, between June 28, 2021 and July 19, 2021.

79. The Class members' identities are readily ascertainable from ALLIANCE's business records.

80. *Class Claims.* The Class claims include all claims each Class member may have for a violation of the FDCPA, RFDCPA or Business and Professions Code § 17200 *et seq.* arising from ALLIANCE having mailed a written communication in the form of *Exhibit A* to such Class member.

81. This action has been brought, and may properly be maintained, as a class action under Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

   (a) *Numerosity.* The Class, which includes more than 40 members, is so numerous that joinder of all members is impractical.

   (b) *Common Questions Predominate.* Common questions of law and fact exist as to all Class members and those questions predominate over any questions or issues involving only individual Class members because they concern the same conduct by Defendants regarding each Class member.

   (c) *Typicality.* Plaintiff's claims are typical of the Class members because those claims arise from a common course of conduct engaged in by Defendants.

   (d) *Adequacy.* Plaintiff will fairly and adequately protect Class members' interests insofar as she has no interests averse to those Class members. Moreover, Plaintiff is committed to vigorously litigating this matter and retained counsel experienced in handling consumer lawsuits, complex legal

issues, and class actions. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue the instant class action.

82. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate because the questions of law and fact common to the Class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

83. Based on discovery and further investigation (including, but not limited to, disclosure by Defendants of class size and net worth), Plaintiff may, in addition to moving for class certification using modified Class claims, Class definitions, or Class periods, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## VI. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
*(Against All Defendants)*

84. The factual allegations in the preceding paragraphs are realleged and incorporated by reference.

85. ALLIANCE is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

86. YAPLE is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

87. The Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

88. AARONSON is a "consumer" as defined by 15 U.S.C. § 1692a(3).

89. *Exhibit A* is a "communication" as defined by 15 U.S.C. § 1692a(2).

90. *Exhibit B* is a "communication" as defined by 15 U.S.C. § 1692a(2).

91. Defendants use of *Exhibits A* and *B* to collect the Debt violated the FDCPA in one or more following ways:

    (a) Using a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e;

    (b) Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

11
CLASS ACTION COMPLAINT

    (c)    Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. §1692e(2)(B);

    (d)    Making false, deceptive, and misleading representations that the communications were drafted by, or received any meaningful review or involvement from, a licensed attorney prior to the mailing of said letters in violation of 15 U.S.C. §§1692e and 1692e(3);

    (e)    Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. § 1692e(5);

    (f)    Using a false representation or deceptive means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692e(10); and

    (g)    Using unfair means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f.

## VII.   SECOND CAUSE OF ACTION
## VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
*(Against Alliance Only)*

92. The factual allegations in the preceding paragraphs are realleged and incorporated herein by reference.

93. ALLIANCE is a "debt collector" as defined by California Civil Code § 1788.2(c).

94. The Debt is a "consumer debt" as defined by California Civil Code § 1788.2(f).

95. AARONSON is a "debtor" as defined by California Civil Code § 1788.2(h).

96. The Debt is a "debt" as defined by California Civil Code § 1788.2(d).

97. The Debt arises from a "consumer credit transaction" as defined in California Civil Code § 1788.2(e).

98. Defendants use of *Exhibits A* and *B* was "debt collection as defined by California Civil Code § 1788.2(b).

99. Defendants use of *Exhibits A* and *B* in an attempt to collect the Debt violated the RFDCPA including but not limited to, California Civil Code §1788.17.

### VIII. THIRD CAUSE OF ACTION
### COMMISSION OF UNLAWFUL, UNFAIR AND/OR FRAUDULENT BUSINESS ACTS AND PRACTICES IN VIOLATION OF THE BUSINESS & PROFESSIONAL CODE §17200, ET. SEQ.

100. The factual allegations in the preceding paragraphs are realleged and incorporated by reference.

101. The UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.

102. Defendants' business acts and practices, as alleged herein, constitute unfair business practices in that they offend public policy and are substantially injurious to consumers. Said acts and practices have no utility that outweighs their substantial harm to consumers.

103. Defendants' business acts and practices, as alleged herein, constitute fraudulent business practices in that they: *(i)* deceive the public and affected consumers as to their legal rights and obligations; *(ii)* allow Defendants gain unfair profits by disadvanting consumers; and *(iii)* give Defendants distinct competitive avantage over honest debt collectors who do not engage in the same unlawful conduct as Defendants.

104. Defendants' unlawful, unfair, and fraudulent business acts and practices described herein present a continuing threat to Plaintiff, members of the general public, and the Classes in that Defendants are currently engaging in such acts and practices and will persist and continue to do so unless and until this Court issues an injunction requiring Defendants to stop.

105. As a direct and proximate result of their illegal acts and practices described herein, Defendants unlawfully received and collected substantial monies from members of the general public and class members to which Defendants are not entitled.

/ / /

/ / /

### IX. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.   For the **FIRST CAUSE OF ACTION**

    (a) An Order certifying this action as a class action under Fed. R. Civ. P. 23 including, but not limited to, defining the Class and Class claims, issues, or defenses, and appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

    (b) An award of statutory damages for Plaintiff and the Class pursuant to 15 U.S.C. § 1692k(a)(2);

    (c) An award to Plaintiff for services on behalf of the Class as determined in the Court's discretion;

    (d) Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    (e) An award of actual damages to Plaintiff and the Class including payments made by Class Members in response to the Letter, and to the extent the recovery of reasonable attorneys' fees and costs cause a negative tax consequence to Plaintiff and/or the Class; and

    (f) For such other and further relief as may be just and proper.

B.   For the **SECOND CAUSE OF ACTION**

    (a) An Order certifying this action as a class action under Fed. R. Civ. P. 23 including, but not limited to, defining the Class and Class claims, issues, or defenses, and appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

    (b) An award of statutory damages for Plaintiff pursuant to California Civil Code §1788.30(b);

    (c) Attorney's fees, litigation expenses, and costs pursuant to California Civil Code §1788.30(c);

    (d)    An award of actual damages to the Plaintiff and Class including Class Members' payments to Defendants in response to the Letter and Collection Complaint, and to the extent the recovery of reasonable attorneys' fees and costs cause a negative tax consequence to Plaintiff and/or the Class; and

    (e)    For such other and further relief as may be just and proper.

**C.**    **For the THIRD CAUSE OF ACTION**

    (a)    An Order certifying this action as a class action under Fed. R. Civ. P. 23 including, but not limited to, defining the Classes and Class claims, issues, or defenses, and appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

    (b)    An order enjoining Defendants from engaging in such acts and practices as herein above alleged;

    (c)    Restitution to the Plaintiff and Classes;

    (d)    Attorney's fees, litigation expenses, and costs; and

    (e)    For such other and further relief as may be just and proper.

### X.    <u>JURY DEMAND</u>

70.    Trial by jury is demanded on all issues so triable.

**THOMASSON PLLC**
*Attorneys for Plaintiff, Matthew Aaronson*

Dated: June 29, 2022    By:    *s/ Amy L.B. Ginsburg*
    AMY L.B. GINSBURG